OPINION OF THE COURT
Sabrina B. Kraus, J.
Background
This summary nonpayment proceeding was commenced by 354 West 56th Street Inc. (petitioner) against Manuel Aguillar (respondent), the rent-stabilized tenant of record, seeking to recover possession of 354 West 56th Street, unit CK, New York, New York 10019 (subject premises) based on the allegation that respondent failed to pay rent due for the subject premises.
Procedural History
Petitioner issued a rent demand dated November 24, 2014, seeking $887.34 in rent for the period through November 14 at a rate of $261.65 per month. The demand was served by conspicuous place delivery on December 2, 2014. The petition is dated March 3, 2015 and seeks $2,080.46 in rent, for a period covering September 2014 through March 2015, in addition to air conditioning charges.
Respondent appeared pro se on March 20, 2015, and filed an answer asserting breach of warranty of habitability. On March 27, 2015, the initial return date, respondent failed to appear and a default judgment was entered against him.
On April 13, 2015, respondent’s motion to vacate the default was granted on consent, and the proceeding was adjourned to June 8, 2015.
On June 22, 2015, the proceeding was assigned to Part R for trial. The trial commenced and concluded on that day, and the court reserved decision.
*276 Prior Related Proceeding
There was a prior nonpayment proceeding between the parties under index number 59537/2014.
That proceeding was settled pursuant to a stipulation (exhibit 6) on August 19, 2014, wherein respondent agreed to pay $1,500 in arrears for all sums due through August 31, 2014, and received an abatement in the amount of $854.85. The stipulation further provided:
“4) Petitioner waives and forgives $262.17 in A/C charges due through 8/31/14 and shall provide Respondent with a rent abatement/credit in the amount of $854.85 in full satisfaction of any and all claims and causes of action that Respondent has or may have had related to or arising from Petitioner’s demolition of a bathroom on the third (3rd) floor of 354 W. 56th St., New York, NY, 10019.
“5) Petitioner agrees to build/construct a water closet on the third floor of said building to replace said demolished third-floor bathroom; Petitioner agrees to use its best efforts to build said water closet on the third floor as quickly as possible in accordance with applicable law(s), including the need, if any, to obtain permit(s) from NYC Dept. Of Buildings. . . .
“7) Upon default, either party may restore upon 8 days’ notice for appropriate relief; Respondent may restore for a hearing on issue of additional rent abatement if said water closet is not completed by December 31, 2014” (exhibit 6).
The proceeding was never restored for further relief.
Findings of Fact
Petitioner is the owner of the subject building pursuant to a deed dated December 16, 1986 (exhibit 1). There is a valid multiple dwelling registration for a period through and including September 2015 (exhibit 2).
Respondent is the tenant of record for the subject premises. Respondent entered possession of the subject premises pursuant to an oral agreement. The legal registered rent for the subject premises is $261.65 per month, as of June 2015 (exhibit 3).
There are 10 months unpaid at that rate from September 2014 through June 2015, for a total of $2,616.50 in rent arrears (exhibit 4).
*277 Respondent credibly testified that there were previously four community bathrooms on the third floor of the subject building where the subject premises are located, and that petitioner removed these in December 2013. Two of the bathrooms had both showers and a toilet, one just had a toilet, and the other just had a shower. Additionally, each floor in the subject building used to have three to four bathrooms. Petitioner also removed most of the community bathrooms on the other floors. From December 2013 through May 2015, respondent attempted to use bathrooms on other floors of the subject building. There was one full bathroom on the second, fourth and fifth floors. However, often there were too many people using the bathrooms, and none were available, or the bathrooms were unavailable due to ongoing construction.
The uncontested evidence at trial was that petitioner is remodeling the building and converting single room occupancy (SRO) units into apartments. The formerly public bathrooms are being incorporated into the newly created units. The New York City Department of Housing Preservation and Development (HPD) website indicates that there are 79 class B units in the building.
Respondent submitted photographs into evidence which show the ongoing construction and conversion, as well as deplorable conditions throughout the common areas of the subject building. Photographs taken in March of 2015 (exhibits E1-E5) show dirty partially deconstructed areas in the third floor hallway, damaged walls, doors and floors, open holes in the ceilings and walls, and human excrement.
In June 2015, petitioner installed a toilet and sink on the third floor.
Photographs taken June 18, 2015 show broken light fixtures in pieces on the floor, and what essentially looks like an unlivable war zone in the common areas around the subject premises.
Finally, respondent submitted a series of photographs showing how poorly the remaining bathrooms are maintained (exhibits D1-D6). The conditions depicted include dirty rusting toilets, unsanitary floors and walls, garbage left on the floors, sinks filled with dirty laundry, and even a turtle floating in a bathtub.
The HPD website indicates there are three outstanding class “B” violations for the subject premises issued in May 2015 all *278 directing petitioner to replace the toilet, bathtub, sink, and light fixtures in the bathroom on the third floor, in addition to numerous outstanding violations for the bathrooms on the other floors and the common areas of the building.
The court takes judicial notice of the certificate of occupancy for the subject building on the New York City Department of Buildings (DOB) website. The certificate of occupancy (CO) is dated March 30, 1953, and designates the building classification as an Old Law Tenement Single Room Occupancy. The CO provides for 13 SRO units on the first floor, along with two rooms for manager’s quarters and one room for an office, and then 16 SRO units on each floor from the second through fifth floors.
The DOB website also indicates that an application for work was approved in July 2005 and that a permit was issued in April 2015. It appears that the plans filed by petitioner were intentionally false to evade compliance with applicable New York State Division of Housing and Community Renewal (DHCR) and HPD regulations. The plans appear to provide that the building is not an SRO and that there would be no change in use or occupancy of the subject building. The application also does not appear to correctly represent the existence of rent-stabilized tenants in place.
Complaints have been consistently filed with DOB regarding the fact that the construction taking place is inconsistent with the work provided for in the permits, but while a stop work order was issued in 2013, petitioner was inexplicably permitted to proceed with the construction after the issuance of a permit.
Discussion
Real Property Law § 235-b provides for an implied warranty of habitability. Landlords of residential premises are required to keep the premises “fit for human habitation” and free of conditions that are dangerous, to the life, health or safety of the tenants (Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, 325, 327 [1979]).
If the landlord breaches the warranty of habitability, the proper measure for damages is “the difference between the fair market value of the premises if they had been as warranted, as measured by the rent reserved under the lease, and the value of the premises during the period of the breach” (Park W. Mgt. Corp., 47 NY2d at 329).
The court must weigh the severity of the violation and duration of the conditions giving rise to the breach, as well as the *279 effectiveness of steps taken by the landlord to abate those conditions (N. Town Roosevelt Assoc. v Mullen, NYLJ, Oct. 27, 1980 at 6, col 45; Concord Vil. Mgt. Co. v Rubin, 101 Misc 2d 625 [1979]).
In this case, the actions of petitioner appear to go far beyond breach of warranty of habitability and constitute an unlawful decrease in services to a rent-stabilized tenant, and unlawful conversion of SRO units.
9 NYCRR 2522.4 (d) provides that an owner may apply to DHCR for a decrease in required services and a corresponding reduction of the legal regulated rent for tenants in certain specified instances including on consent of the tenant, where required by law, when related to electrical conversions or if such decrease is not inconsistent with the Rent Stabilization Law. The statute specifies that no such decrease in services shall take place prior to approval by DHCR (§ 2522.4 [d] [4]).
Similarly, 9 NYCRR 2522.4 (e) provides that “[a]n owner may file an application to modify or substitute required services, at no change in the legal regulated rent,” where it is on consent, required by law or not inconsistent with the Rent Stabilization Law and Code. Again, no such modification or substitution may take place prior to the approval of the owner’s application by DHCR (§ 2522.4 [e]).
9 NYCRR 2520.6 (r) (1) defines required services as
“[t]hat space and those services which the owner was . . . required to maintain on the applicable base dates . . . and any additional . . . services provided or required to be provided thereafter by applicable law. These may include, but are not limited to, the following: repairs, decorating and maintenance, the furnishing of light, heat, hot and cold water, elevator services, janitorial services and removal of refuse.”
9 NYCRR 2520.6 (r) (3) defines ancillary services as “[t]hat space and those required services not contained within the individual housing accommodation which the owner was providing on the applicable base dates . . . and any additional space and services provided or required to be provided thereafter by applicable law.”
The base date for required services “for housing accommodations contained in Class B multiple dwelling units, including single room occupancy facilities . . . , for building-wide and individual dwelling unit services” is June 4, 1981 (9 NYCRR 2520.6 [r] [4] [viii]).
*280 In addition to these protections for rent-stabilized tenants, tenants in SRO buildings are protected by regulations intended to prevent petitioner from doing exactly what has been done in the case at bar. As argued by some tenant advocates:
“SRO tenants are . . . protected by a city ordinance that requires owners who want to convert SRO housing to other uses to first obtain a 'Certificate of No Harassment.’ The purpose of this law is to protect SRO tenants from harassment intended to force them out of their homes, a common landlord practice to facilitate construction and conversion. . . .
“Many SRO landlords don’t . . . seek certificates before attempting to convert their building. Instead, they falsify their work-permit application, or obtain a lower-level work permit that doesn’t require a certificate, and then proceed to work beyond the scope of the permit. In these situations, SRO tenants and their advocates find that the city Department of Buildings seldom issues stop-work orders, rarely enforces them, [or] . . . rescinds a work permit when fraud or illegal work is discovered.” (Frank Brodhead, SRO Tenants: Affordable Housing Under Siege, www.tenant.net/Tengroup/ Metcounc/Oct98/sro .html.)
Indeed this scenario does seem consistent with what is happening in the case at bar.
Administrative Code of the City of New York §§ 28-107.3 and 28-107.4 require owners to obtain a certificate of no harassment prior to the issuance of a permit to convert use of the building, in whole or in part, for other than SRO purposes. The Administrative Code further provides such requirement with respect to the addition or removal of kitchen and bathroom facilities.
Petitioner offered no evidence at trial of having sought or obtained DHCR approval for the dramatic change in first eliminating all four bathrooms on the third floor, and then only replacing a sink and a toilet, IV2 years later. Petitioner offered no evidence at trial of having obtained a certificate of no harassment allowing the conversion of SRO units, elimination of bathrooms, or change in use. Petitioner appears to have filed fraudulent permit applications with DOB. Petitioner appears to be guilty of harassing respondent and other SRO tenants in the subject building.
*281 Based on the foregoing the court finds that petitioner has failed to establish the right to collect rent in this proceeding. Until petitioner complies with its obligations to obtain DHCR approval and/or a certificate of no harassment for the ongoing illegal construction at the subject building, petitioner cannot establish an entitlement to collect rent. Indeed the court cannot make a determination as to what the legal rent is, because once petitioner applies for a decrease or modification in services, the agency has the right to lower the rent, and may make such a determination applicable retroactively. Based on the foregoing the proceeding is dismissed.
Additionally, the court shall forward copies of this decision to appropriate city and state agencies so that said agencies may further investigate the issues raised herein and take any appropriate action.
Finally, respondent if so advised may go to DHCR to file a decrease in services complaint and/or harassment proceeding against petitioner, and may be well advised to seek the advice of a legal services advocate such as Westside SRO in order to protect his rights.